| | |
|---|---|
| ISMAIL Y YACOOBALI,<br>          Plaintiff,<br>    v.<br>ANDREW SAUL,<br>          Defendant. | Case No. 19-cv-00682-HSG<br><br>**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 21 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Defendant Andrew Saul is the Acting Commissioner of the Social Security Administration ("SSA"). The former Acting Commissioner, Nancy Berryhill, acting in her official capacity, denied Plaintiff Ismail Y. Yacoobali's application for disability insurance benefits ("DIB"). Dkt. No. 1. Plaintiff seeks judicial review of that decision.

On May 24, 2019, Defendant lodged the administrative record with the Court. Dkt. No. 12 ("AR"). Plaintiff filed his motion for summary judgment on July 19, 2019, Dkt. No. 16 ("Pl. Mot."); Defendant filed a cross-motion for summary judgment and opposition on August 30, 2019, Dkt. No. 21 ("Def. Mot."). For the reasons set forth below, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

I. **BACKGROUND**

    **A. Factual Background**

On November 25, 2014, Plaintiff filed an application for DIB pursuant to Title II of the Social Security Act (the "Act"), alleging that he became disabled and unable to work as of May 3, 2013. (AR 179-80). The agency denied Plaintiff's application. (AR 110-14, 117-22). Plaintiff then appeared before an Administrative Law Judge ("ALJ") on September 26, 2017. (AR 33-76). In a decision dated February 14, 2018, the ALJ found that Plaintiff was not disabled. (AR 12-32).

Plaintiff requested review of the ALJ's decision with the Appeals Council. (AR 178). On December 14, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision a final decision. (AR 1-6). Plaintiff then filed this action pursuant to 42 U.S.C. § 405(g).

### i. Plaintiff's Medical Condition

Plaintiff alleged that he became disabled and unable to work beginning on May 3, 2013 due to a neck and left shoulder injury. (AR 216). Plaintiff alleged that he is unable to carry or lift items, or reach overhead without pain. (AR 249, 254). Plaintiff testified that he could use his left upper extremity to move small items, but not larger items such as a chair. (AR 45). Plaintiff also suffers from hearing loss and headaches. (AR 17). Plaintiff explained that he has pain on his left side, down his left hand to the last three fingers, and that he does not have a solid grip on the left side. (AR 44, 58). Plaintiff also testified that his anxiety and depression make it so that he is unable to socialize. (AR 50-51). Plaintiff was diagnosed with physical and mental impairments that include cervical disc disease, radiculopathy, chronic pain syndrome, migraines, major depression and anxiety. (AR 622, 782, 893, 900).

## B. Legal Framework of the Social Security Act

To qualify for DIB, a claimant must be "disabled" as defined by the Act. Both benefit programs define disabled as an individual's inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505; *id*. § 416.905. The SSA deems a person disabled only if:

> [H]is physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); *id*. § 1382c(a)(3)(B).

### i. Five-Step Process for Evaluating Claimant's Disability Claim

When the claimant is dissatisfied with the initial and reconsidered decisions by the SSA, the claimant may request a hearing in front of an ALJ. 20 C.F.R. §§ 404.929, 416.1429. The ALJ will issue a new decision based on the preponderance of the evidence developed in the hearing record and in the file. *Id.* §§ 404.929, 416.1429. To determine whether the claimant qualifies for disability benefits, the ALJ utilizes a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

#### a. Step One: Substantial Gainful Work Activity

At step one, the ALJ determines whether the claimant is currently engaged in work activity that is substantial and gainful. *Id.* § 404.1520(a)(4)(i), (b); *id.* § 416.920(a)(4)(i), (b). Substantial work activity "involves doing significant physical or mental activities . . . even if it is done on a part-time basis" or requires "do[ing] less, get[ting] paid less, or hav[ing] less responsibility than when [the claimant] worked before." *Id.* §§ 404.1572(a), 416.972(a). "Gainful work activity is work activity that [the claimant] do[es] for pay or profit . . . whether or not a profit is realized." *Id.* §§ 404.1572(b), 416.972(b). If the claimant is engaged in substantial gainful activity, then the claimant is not disabled, regardless of any medical condition or the claimant's age, education, or work experience. *Id.* § 404.1520(a)(4)(i), (b); *id.* § 416.920(a)(4)(i), (b).

#### b. Step Two: Medical Severity of Impairment

If the claimant is not presently engaged in substantial gainful activity, then the ALJ determines whether the claimant's alleged impairments are medically severe. *Id.* § 404.1520(a)(4)(ii), (c); *id.* § 416.920(a)(4)(ii), (c). If the claimant lacks "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities," then the impairments are not severe. *Id.* §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs," including physical functioning, sensory capacity, following instructions, use of judgment, and responding appropriately to routine work situations (including supervision and interactions with coworkers), and dealing with changes to work routines. *Id.* §§ 404.1521(b), 416.921(b). Additionally, "[u]nless [the claimant's] impairment is expected to result in death, it

must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not meet these requirements, then he is not disabled, regardless of any medical condition or the claimant's age, education, or work experience. *Id.* § 404.1520(a)(4)(ii), (c); *id.* § 416.920(a)(4)(ii), (c).

### c. Step Three: Listed Impairment

If the claimant has a severe impairment, the ALJ proceeds to step three and determines whether the claimant's impairment, or combination of impairments, medically "meets or equals" an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1 ("App. 1"). *Id.* § 404.1520(a)(4)(iii), (d); *id.* § 416.920(a)(4)(iii), (d); *see also id.* §§ 404.1525, 416.925 (describing Appendix 1's purpose, organization, and use). A claimant's impairment is medically equivalent to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." *Id.* §§ 404.1526(a), 416.926(a). If the claimant's impairment meets or exceeds the requirements of a listed impairment, the claimant is disabled, regardless of age, education, and work experience. *Id.* § 404.1520(a)(4)(iii), (d); *id.* § 416.920(a)(4)(iii), (d).

### d. Step Four: Residual Functioning Capacity and Past Relevant Work

At step four, if the claimant does not have a listed impairment, the ALJ assesses the claimant's residual functional capacity ("RFC") and ability to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e); *id.* § 416.920(a)(4)(iv), (e). The ALJ assesses all relevant evidence in the record to determine the claimant's RFC. *Id.* §§ 404.1520(e), 416.920(e). The claimant's RFC gauges the most the claimant can do despite the limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1). Before making a determination, the SSA is responsible for developing the claimant's complete medical history. *Id.* §§ 404.1545(a)(3), 416.945(a)(3).

In the RFC assessment, the ALJ assesses the claimant's physical and mental abilities, as well as other abilities affected by the claimant's impairments. *Id.* §§ 404.1545(b)–(d), 416.945(b)–(d). With respect to a claimant's physical abilities, "[a] limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and

4

other work." *Id.* §§ 404.1545(b), 416.945(b). Regarding a claimant's mental abilities, "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [the claimant's] ability to do past work and other work." *Id.* §§ 404.1545(c), 416.945(c). Additionally, "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities." *Id.* §§ 404.1545(d), 416.945(d).

Next, the ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the ALJ determines that the claimant can still perform the past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(f), 416.920(f). "Past relevant work" is work that the claimant has done in the past 15 years, that qualifies as substantial gainful activity, and that has "lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). The ALJ will determine whether the claimant can do her past relevant work by evaluating the claimant's testimony on work performed in the past. *Id.* §§ 404.1560(b)(2), 416.960(b)(2). In addition, the ALJ may evaluate the testimony of other people familiar with the claimant's past work, the opinions of a vocational expert ("VE"), or other resources, such as the Department of Labor's Dictionary of Occupational Titles ("DOT"). *Id.* §§ 404.1560(b)(2), 416.960(b)(2). If the claimant is found not capable of performing past relevant work at step four, then the burden of proof shifts to the Commissioner of the SSA ("Commissioner") to prove that the claimant is not disabled at step five. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

### e. Step Five: Adjustment to Other Work

If the claimant cannot perform past relevant work, then at step five the ALJ determines whether the claimant can adjust to other work based on the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The ALJ uses the RFC assessment from step four to determine whether the claimant can adjust to other work. *Id.* §§ 404.1560(c)(1), 416.920(c)(1). If the ALJ determines that "other work exists in significant

5

1 numbers in the national economy that [the claimant] can do," then the claimant is not disabled. *Id.*
§§ 404.1560(c)(2), 416.920(c)(2). The ALJ may meet the step five burden in two ways: "(1) the testimony of a VE or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *See Osenbrock v. Apfel*, 240 F.3d 1157, 1161 (9th Cir. 2001).

### C. Procedural History

The ALJ applied the five-step sequential analysis under 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 3, 2013. (AR 17). At step two, the ALJ found that Plaintiff had severe impairments, including degenerative disc disease of the cervical spine, depression, and generalized anxiety disorder. (AR 17). At step three, the ALJ found that Plaintiff's impairments did not meet or equal in severity one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 18). Between steps three and four, the ALJ found that Plaintiff retained the RFC to perform a reduced level of light work as defined in 20 C.F.R. § 404.1567(b). (AR 19-20). At step four, the ALJ found that Plaintiff could not perform his past relevant work given the limitations in the RFC findings. (AR 25). At step five, the ALJ relied on VE testimony and found that, given Plaintiff's age, education, work experience, and residual function, there were other jobs that exist in significant numbers that Plaintiff could perform. (AR 25-26). Therefore, the ALJ found that Plaintiff was "not disabled" as defined in the Social Security Act. (AR 26).

## II. STANDARD OF REVIEW

The Court has jurisdiction to review final decisions of the Commissioner. *See* 42 U.S.C. § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). The Court may disturb the Commissioner's decision to deny benefits only if the decision is not supported by substantial evidence, or is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be more than a mere scintilla, but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (internal

6

quotation marks and citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The ALJ is responsible for making determinations of credibility and for resolving evidentiary ambiguities, including conflicting medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Additionally, the Court "may not reverse an ALJ's decision on account of an error that is harmless. The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674 F.3d at 1111 (internal quotation marks, brackets, and citations omitted).

### III. DISCUSSION

Plaintiff does not dispute various findings in the record cited by the ALJ. Pl. Mot. at 3. The Court will only address Plaintiff's contentions regarding the ALJ's finding of non-disability, specifically the ALJ's: (1) evaluation of Plaintiff's credibility; (2) evaluation of medical opinion evidence, namely Dr. Rose Lewis, M.D. and Dr. Tania Shertock, Ph.D; and (3) step five findings.

#### A. The ALJ's Credibility Analysis

First, the ALJ's primary consideration is the consistency of Plaintiff's statements with the objective medical evidence. 20 C.F.R. § 404.1529(c)(2). The ALJ did not discount the entirety of Plaintiff's allegations, and considered Plaintiff's testimony and the medical opinion evidence in the record. (AR 20-22). However, the ALJ found that elements of Plaintiff's statements regarding his symptoms were not fully supported by the record. (AR 19-20). The ALJ also found that the objective medical evidence was not entirely consistent with Plaintiff's alleged limitations. (AR 20-22).

The ALJ found that despite Plaintiff's allegations that he had debilitating neck and left side upper extremity pain, his medical records highlighted that he often exhibited no distress, no swelling or deformity of the cervical area, that his grip strength was normal and his sensation was intact, and that he had good radial pulses and capillary refill. (AR 20, 325, 327-38, 333-36, 338,

7

341-42, 345, 351, 359, 362). The ALJ considered diagnostic imaging, including an August 1, 2014 x-ray of Plaintiff's cervical spine that showed "unremarkable pre-vertebral soft tissues, reversed cervical lordosis, unremarkable disc heights, unremarkable facets, and normal odontoid process." (AR 21, 479). The ALJ also considered Plaintiff's September 30, 2014 MRI which showed "no evidence of severe central canal or neural foraminal stenosis." (AR 21, 883).

The ALJ cited to the examination of neurologist Dr. Tarun Arora, M.D., noting that Plaintiff's left upper extremity showed clear weakness, deltoid strength was 4/5, bicep strength was 5-/5, hand grip was 4/5, thumb opposition was 4/5, and finger abduction was 5/5. (AR 21 (citing AR 870)). Nonetheless, Dr. Arora concluded that Plaintiff's cervical MRI and cervical flexion extension x-rays were relatively unremarkable, and that Plaintiff's reported degree of muscle weakness and wasting were disproportionate to his imaging studies. (AR 873). The ALJ found that "such motor strength deficits are not of an extreme nature and are not supportive of [Plaintiff's] assertion that he has no [left hand] grip strength." (AR 21). The ALJ also considered a December 2015 electromyography test and nerve conduction which found that both were within the normal limits and contained no evidence of electrical instability or radiculopathy. (AR 21, 720). The ALJ noted that these diagnostic findings were near contemporaneous with Plaintiff's subjective statements of a new onset of right upper extremity tremors and worsening left upper extremity pain. (AR 21, 887).[1]

With respect to Plaintiff's mental impairments, the ALJ noted that "[t]he evidence for the extent and severity of the [Plaintiff's] mental impairments is similarly mixed," and that Plaintiff's mental status examinations in the record did not support the claimed extent of Plaintiff's reported symptoms. (AR 21). The ALJ noted that, while Plaintiff sometimes exhibited a flat affect or a sad mood, he was often observed to have a normal mood and affect. (AR 21, 484, 486, 672, 702, 810, 815, 870). The ALJ also noted that Plaintiff's depression screenings indicated no symptoms on

---

[1] The record also reflects that Plaintiff was referred to Jeffery Ralph, M.D., who performed a neuromuscular subspecialty consultation to assess whether Plaintiff had an underlying myopathy or neuromuscular disorder. (AR 726). In April 2016, Dr. Ralph concluded that neurologically, Plaintiff's strength is preserved and that the results on the imaging study were "underwhelming." (AR 729). Dr. Ralph also opined that, "I doubt his pain is related to an orthopedic issue either given the minimal pain on passive range of motion of the left shoulder." (AR 729).

8

repeated occasions. (AR 21, 498, 635, 760, 784, 787, 796). The ALJ cited to several mental status examinations that were "normal or near normal," and highlighted that Plaintiff was alert and oriented, had normal mood and affect, linear and logical thought processes, was "grossly attentive," and his memory was intact. (AR 21, 491, 493, 495, 627, 629, 631, 633, 702, 728, 882).

The ALJ discussed a number of Plaintiff's activities as part of the basis for her conclusion that Plaintiff's reporting of symptoms was not entirely consistent with the medical evidence. (AR 20-22); *see* 20 C.F.R. § 404.1529(c)(3)(i) (ALJ may consider daily activities); *Molina*, 674 F.3d at 1112 (ALJ entitled to consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). For example, Plaintiff alleged that his depression and anxiety were so severe that he was unable to socialize, and that he could not reach overhead or carry or lift objects. (AR 20-22, 50-51, 249, 254). However, the ALJ found that Plaintiff was able to travel internationally on a 15-hour flight to India where he stayed for six weeks without medical care. (AR 21). The ALJ found that "the record is devoid of any mention of problems resulting from that extensive trip." (AR 21). The ALJ also noted that Plaintiff was able to drive, perform academically, participate in services at his mosque and attend an interfaith gathering at a local synagogue. (AR 22). The ALJ similarly found that Plaintiff wanted to become an accountant, "which would not be expected of an individual who believes himself to be substantially limited in his mental functioning." (AR 22).

Plaintiff contends that, in assessing the above activities, the ALJ failed to consider testimony that Plaintiff had a difficult time on the plane to India, had to walk up and down the aisle of the plane, could not sleep, and was not "happy." (Pl. Mot. at 4-5; AR 61-62). Plaintiff contends he testified that he went to India only to visit his sick mother (AR 61), and there was no indication in the record that this was a vacation. Pl. Mot. at 5. Plaintiff similarly contends that "[s]itting (or pacing around) on a plane or even being at his mother's house for a number of weeks does not contradict any claims nor reflect an ability to perform full time work." *Id*.

However, the ALJ was entitled to consider whether Plaintiff's activities were inconsistent with the physical or mental symptoms alleged. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (inconsistencies between the claimant's daily activities and reported limitations are

9

sufficient reasons for rejecting the claimant's testimony); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly doubted the claimant's testimony about the extent of his pain and limitations based on his ability to travel to Venezuela for an extended time to care for an ailing sister, even though the claimant asserted the need to see a physician for exacerbation of his back pain while traveling). Therefore, in reaching its RFC finding, the ALJ could assess these inconsistencies between Plaintiff's account and the totality of the record.

Lastly, the ALJ cited Plaintiff's improvement with treatment to show that Plaintiff's subjective symptom testimony was not supported by the record. (AR 20-22); *see* 20 C.F.R. § 404.1529(c)(3)(iv)(v) (an ALJ considers the nature and effectiveness of treatment a claimant receives). Specifically, the ALJ noted that Plaintiff was engaged in mental health therapy with Patrina Anacker, Psy.D. (AR 21, 738-793). The ALJ found that Plaintiff had made progress working with Dr. Anacker, Psy.D., which had reduced some of Plaintiff's fears. (AR 21, 51). The ALJ considered chart notes which indicated that Plaintiff was able to remain calm in public or at school, although he was easily upset at home when his kids left things out of order. (AR 21, 758). The ALJ also cited chart notes from 2017 which showed that Plaintiff reported fewer mood swings, felt optimistic about his medication, reported doing well in his classes, was driving more despite his anxiety, and was asked to say a prayer at his mosque on Fridays. (AR 22, 755). The ALJ reasonably concluded that a restriction to occasional public interaction and work that is simple and repetitive would reasonably accommodate Plaintiff's mental limitations. (AR 22).

The Court finds that the ALJ reviewed the above evidence in detail, and provided specific reasons to support the conclusion that Plaintiff's testimony was contradicted by objective findings in the record. Contrary to Plaintiff's argument, the ALJ did not simply choose isolated instances of improvement of mental health. *See* Pl. Mot. at 3 (citing *Garrison v. Colvin*, 759 F.3d, 995, 1017 (9th Cir. 2014)). The ALJ's decision was properly supported, and Plaintiff fails to meet his burden of showing that the ALJ's findings lacked substantial evidence.

### B. Evaluation of Medical Evidence

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b), (c). Plaintiff contends that the ALJ should have given greater weight to the opinions

10

of examining doctors Rose Lewis, M.D., and Tania Shertock, Ph.D. Pl. Mot. at 6-8. The Court addresses each examining doctor at issue in turn.

### i. Dr. Rose Lewis, M.D.

Dr. Rose Lewis, M.D., a consultative examiner, noted that Plaintiff could stand and walk for four hours, sit for six hours, frequently lift and carry less than 10 pounds, frequently handle and occasionally perform all other manipulative activities. (AR 682). Dr. Lewis concluded that Plaintiff "can frequently stoop, crouch, or kneel, and only occasionally crawl or climb ramps or stairs, and never climb ladders, ropes, or scaffolds. (AR 24). The ALJ assigned this "partial weight" because her opinion was not consistent with her own test results or the record. (AR 24).

The ALJ noted that Dr. Lewis' standing and walking limitations were inconsistent with her testing that showed a negative Romberg test, and normal ambulation without an assistive device. (AR 680). Plaintiff had pain on the left with the straight leg raising test, but had no pain on the right (AR 681), and his motor strength was mostly normal in the bilateral lower extremities (AR 681-82). Plaintiff's sensory exam was grossly intact and his deep tendon reflexes were normal. (AR 682). The ALJ thus found Plaintiff capable of meeting the standing and walking requirements of light work. (AR 21, 24).

Although Plaintiff argues that Dr. Lewis found that Plaintiff had difficulty toe-heel walking, Pl. Mot. at 6, that alone does not undermine the ALJ's findings. The ALJ cited to medical evidence in the record which showed that Plaintiff's walking pace was within normal limits. (AR 24, 351, 622, 723). The ALJ also noted that the exam of Plaintiff's right upper extremity was essentially normal, while his left upper extremity and cervical spine showed some limitations. (AR 24). Specifically, although Plaintiff was unable to pick up a paperclip with his left hand, he was able to do so with his right hand. (AR 670). The ALJ cited to Dr. Lewis' conclusions that Plaintiff had limited range of motion in the cervical region, his range of motion was worse in his left shoulder, and his grip strength on the right was normal but reduced on the left. (AR 24 (citing AR 680-82)).

Instead of fully adopting Dr. Lewis' assessed limitations for the right upper extremity, the ALJ limited Plaintiff's use of the right upper extremity to occasional overhead reaching, and

frequent handling, fingering, and feeling. (AR 19-20). As to the left side, the ALJ adopted Dr. Lewis' opinion with respect to manipulative activities and, in some instances, included greater limitations than assessed. (*Compare* AR 19-20 (ALJ finding that "the claimant . . . can occasionally balance, stoop, kneel, crouch, and crawl) *with* AR 682 (Dr. Lewis assessment that "stooping, crouching, and kneeling are frequently.")). The Court finds that the ALJ's decision was supported by substantial evidence, and the ALJ did not commit legal error in weighing Dr. Lewis' medical opinion. *See Magallanes*, 881 F.2d at 753 (when weighing a medical opinion, the ALJ need not agree with the entirety of the opinion, and may consider some sections less significant than others when evaluated against the other evidence of record); 20 C.F.R. § 404.1527(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").[2]

### ii. Dr. Tania Shertock, Ph.D.

The ALJ assigned "partial weight" to the opinion of consultative examiner Dr. Tania Shertock, Ph.D., who opined that Plaintiff is capable of understanding, remembering, and carrying out simple instructions, and moderately limited in understanding, remembering, and carrying out complex instructions, maintaining attention, concentration, persistence and adequate pace, and withstanding the stress of an eight-hour day. (AR 24, 673). Dr. Shertock also noted that Plaintiff is impaired in his ability to adapt to changes in routine work-related settings, and his ability to interact with the public, supervisors, and coworkers was adequate with limitations. (AR 24).

The ALJ found Plaintiff capable of performing work involving simple, repetitive tasks with only occasional public contact. (AR 19-20). The ALJ explained that an assessment of

---

[2] Plaintiff contends that it was also error for the ALJ to assign more weight to the opinion of Janine Marinos, Ph.D., who did not use medical records in formulating her opinion. Pl. Mot. at 7. However, Dr. Marinos did not provide any opinion as to Plaintiff's physical functional limitations. (AR 685-87). Dr. Marinos stated that "an additional obstacle to adequate work performance may be the claimant's medical condition. This matter is beyond the scope of today's evaluation, and is deferred to a medical opinion." (AR 673). Regardless, the ALJ assigned great weight to Dr. Marinos for reasons Plaintiff has not challenged here. (AR 23).

12

"moderate" in the categories assessed by Dr. Shertock does not directly translate to appropriate language for an RFC finding. (AR 24). The Social Security regulations use the term "moderate" to rate the degree of mental functioning deficits at steps two and three of the sequential evaluation as part of the psychiatric review technique. *See* 20 C.F.R. § 404.1520a(a), (c)(4) (explaining the use of a five point scale of none, mild, moderate, marked, and extreme). Thus, in articulating the RFC findings, the ALJ was required to translate Dr. Shertock's assessed limitations of "moderate" into functional limitations. The ALJ explained that Dr. Shertock's assessment of marked impairment in adaptability is not consistent with Plaintiff's ability to take an extended international trip, or his successful academic performance in school (AR 24, 61, 747), or Dr. Shertock's own findings that Plaintiff is able to function adequately, including demonstrating a logical, organized, and coherent thought process and normal insight and judgment. (AR 672). These are proper reasons for discounting parts of Dr. Shertock's opinion under the regulations. *See* 20 C.F.R. § 404.1527(c)(4) (consistency) and 20 C.F.R. § 404.1527(c)(3) (supportability); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly discounted doctor's limitations for being inconsistent with Plaintiff's level of activity).

Plaintiff contends that the ALJ did not consider Dr. Shertock's opinion that Plaintiff is moderately limited in the areas of maintaining adequate pace or withstanding stress during an eight-hour workday. Pl. Mot. at 7. However, the ALJ reasonably translated Dr. Shertock's proffered moderate limitations in those areas into her RFC findings when she found Plaintiff to be limited to simple, repetitive tasks, and occasional public contact. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173- 74 (9th Cir. 2008) (an RFC for simple, routine, and repetitive work adequately addresses moderate limitations in concentration, persistence, and pace.). The ALJ was not required to accept every aspect of any medical opinion, but instead was simply required to explain findings and support them with substantial evidence, as the ALJ did here. *Batson v. Comm. of Social Security Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion."). The Court thus finds the ALJ's decision to assign Dr. Shertock's opinion partial weight was supported by substantial evidence.

13

## C. Step Five Findings

Lastly, at step five the ALJ made a factual finding that a significant number of jobs exist in the national economy that Plaintiff could perform. (AR 26). That factual finding is "'conclusive' in judicial review" of a disability decision so long as it is "supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g)).

Plaintiff contends that the ALJ erred in failing to fully develop the record consistent with the requirement of SSR-00-4p. Pl. Mot. at 8. SSR 00-4p requires that the adjudicator "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor."

At the hearing, the ALJ asked VE Robin Scher to identify light work positions that a hypothetical person who had the same age, education, and work experience and limitations as Plaintiff could perform. (AR 68-69). VE Scher listed jobs such as Office Helper (DOT 239.567-010) with 50,000 jobs nationally; and Photo Copy Machine Operator (DOT 207.685-014) with 60,000 jobs nationally. (AR 67). VE Scher explained that the DOT does not address overhead reaching, handedness, or flexion and rotation of the neck. (AR 66). The ALJ found that because the DOT addresses neither dominant hand nor neck flexion, VE Scher could rely on education and experience to render her opinion. (AR 26). VE Scher noted that the information used in providing her testimony concerning those limitations came from her 27 years of experience as a vocational rehabilitation counselor in which she has analyzed "hundreds of jobs." (AR 66-67). "An ALJ may take administrative notice of any reliable job information, including information provided by a VE. A VE's recognized expertise provides the necessary foundation for his or her testimony." *Bayliss v. Barnhart*, 427 F. 3d 1211, 1218 (9th Cir. 2005) (citing *Johnson v. Shalala* 60 F.3d. 1428, 1435 (9th Cir. 1995)).

VE Scher's experience properly provided substantial evidence to support the step five finding, even without any accompanying data. *See Biestek*, 139 S. Ct. at 1148 ("A vocational expert's refusal to provide private market-survey data upon the applicant's request does not

14

categorically preclude the testimony from counting as "substantial evidence."); *Dewey v. Colvin*, 650 Fed. App'x 512, 514 (9th Cir. 2016) (finding that because the DOT was silent on whether or not the jobs in question allowed for a sit/stand option, there was no conflict). Because there was no potential conflict to resolve, nothing more was required of VE Scher beyond providing her testimony. *See Bayliss*, 427 F.3d at 1218 ("A VE's recognized expertise provides the necessary foundation for his or her testimony" and, therefore, "no additional foundation is required").

The Court finds that VE Scher was not required to provide further support as to how the representative jobs could be performed, given that she took into account the ALJ's RFC findings limiting use of the upper extremities. VE Scher's testimony was sufficient to meet the substantial evidence standard, and Plaintiff has failed to identify reversible error in the ALJ's findings.[3]

IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment. The ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

Dated: 3/20/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[3] Plaintiff contends that VE Scher created a conflict with the ALJ's hypothetical question that limited Plaintiff to "occasional" pushing and pulling with the left upper extremity, by testifying that "these days lots of offices have carts, so the person is not really lifting." *See* Dkt. No. 24 at 1-2 (citing AR 65, 69). The Court finds that the testimony did not create any conflict because VE Scher unambiguously testified that Plaintiff could perform these types of light work occupations (*i.e.*, office helper and photocopier) as defined in the DOT. (AR 67).

15